IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **HERMAN TOWNSEND**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. **03-237-JLF** |
| **TOMA OSMAN, et al.**, | ) ) ) |
| Defendants. | ) ) |

### REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to Judge James L. Foreman pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the Court are two motions for summary judgment, as follows:

- Motion for Summary Judgment filed by defendants Johnson, J Null, R Clover, C/O Cruise, C/O Gibson, B Goins, J Grubbs, Hilliard, Kizzer, M McGovern, C Nix, E Plott, C/O Serles, Shields, J Studder, J Walker, D Wallard, C Taylor, B Neighbors, D Folsom, C/O Dillingham, R Smith, Lois Prater, Toma Osman, C/O Ode, M Swetland, Lt Clark, George Welborn.**(Doc. 30)**;

- Motion for Summary Judgment filed by defendant J Moore **(Doc. 36)**; and

- Motion for Summary Judgment filed by defendant James Goerge **(Doc. 118)**.

Defendants filed Memoranda in Support. **(Docs. 31, 37 and 119)**. The motions are supported by affidavits. **See, Doc. 33 and exhibits attached to the memoranda.** The notices required by *Lewis v. Faulkner*, **689 F.2d 100 (7th Cir. 1982)** were served on plaintiff. **(Docs. 32,  and 38 and 120)**.

Plaintiff has filed several pleadings in response. **See, Docs. 113, 116, 126.**

Defendants seek judgment on some of plaintiff's claims because plaintiff failed to

exhaust his administrative remedies.

## Nature of Plaintiff's Claim

Plaintiff, a prisoner in the custody of the Illinois Department of Corrections, brings this suit under **42 U.S.C. §1983**. On preliminary review, the Court divided plaintiff's claim into 5 counts and dismissed parts of Count 2, all of Count 3, all of Count 5. The following counts are pending:

**Count 1,**

(a) On January 31, 2001, Grubbs, Gibson, Shields and Kizzer assaulted him while escorting him to his cell after a sick call visit (¶¶ V9-10).

(b) On February 1, 2001, J. Moore and Cruise (*a/k/a* Serles) assaulted him (¶¶ V12-14).

(c) On May 8, 2001, Plott, Neighbors, Wallard, Hilliard and Studder assaulted him (¶ V23).

(d) On May 14, 2001, Walker and Cruise (*a/k/a* Serles) assaulted him (¶ V25).

(e) On August 24, 2001, Goerge and Null assaulted him (¶ V32).

(f) On September 15, 2001, Smith assaulted him (¶ V41).

(g) On March 13, 2001, Gibson and Grubbs assaulted him (¶ V44)

(h) On February 4, 2003, Sanders assaulted him (¶ V97).

**Count 2:**

(d) On January 29, 2002, Plaintiff gave a legal packet to Blair for mailing. Because the court of appeals did not receive the packet until February 26, and because they did not receive all of the documents, Plaintiff asserts that Blair stole his mail, thus resulting of denial of his *in forma pauperis* motion to appeal an adverse ruling in *Townsend v. Ellinger*, Case No. 00-1392 (C.D. Ill., filed Nov. 17, 2000) (¶ V55).

(e) In general, Plaintiff alleges that Osman is trying to sabotage his litigation, in conspiracy with J. Johnson, Taylor, Neighbors, Folsom, C/O Clover and Welborn (¶ V56, V63-65).

(f) On August 5, 2002, Folsom, Taylor, J. Johnson and Neighbors did a shake-down of Plaintiff's cell, confiscating legal property including copies of grievances, motions, and other pleadings. Thus, Plaintiff was thwarted from filing a petition for writ of certiorari with the Supreme Court to challenge an adverse decision in *Townsend v. Herndon*, Case No. 02-4055 (¶ V57-60, V62).

(h) On June 6, 2002, Plaintiff gave three pieces of legal mail to Dillingham for mailing. Apparently Dillingham failed to put that mail in the mailbag, as C/O Jordan informed Plaintiff the next day that he had seen Plaintiff's outgoing mail on the desk. Several days later, Dillingham told Plaintiff that Null had ordered him not to send out Plaintiff's mail (¶ V73-75).

(m) On January 26, 2003, Plaintiff gave to Swetland outgoing legal mail consisting of summons and U.S. Marshal forms for *Townsend v. Snyder*, Case No. 03-03008 (C.D. Ill., filed Jan. 10, 2003). Plaintiff asserts that Swetland, Ode, Prater, Nix and Clark conspired to interfere with this mail by failing to send it, although they allegedly provided Plaintiff with false documentation that the mail was sent (¶¶ V37-38, V87-89).

(o) On December 1, 2002, Plaintiff gave some outgoing mail to Goins that consisted of an amended complaint for *Townsend v. Herndon*, Case No. 02-6500. That mail was intended for his mother, who was to make copies for him before mailing it to the court. Plaintiff alleges that Goins sabotaged the complaint by removing pages and replacing them with photocopies of other pages (¶¶ V91-92).

(q) On January 16, 2003, Plaintiff mailed an appeal to the U.S. Judicial Conference regarding a judicial misconduct complaint, No. 02-7-372-22; he claims that McGovern stole that mail (¶ V95).

(s) On July 30, 2000, Rowody stole legal mail consisting of seven criminal complaints, which Plaintiff intended to mail to the Alexander County States' Attorney (¶ B33).

(u) Osman has refused to provide him with updated case law, refused to Shepardize a specific case, delayed in making requested copies, and "everything" (¶¶ V65-70, V34-36, V22$_6$).

**Count 4**
On May 6, 2002, Newell gave him a food tray containing cheese laced with tiny shards of glass, which cut his gums and damaged his teeth (¶ V49, B135).

## Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The Court must construe the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in favor of that party. **See,** *Anderson v. Liberty Lobby Inc.*, **477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986)**.

Once the moving party has produced evidence to show that it is entitled to summary judgment, the nonmoving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, **91 F.3d 922, 931 (7th Cir.1996).** In responding to a summary judgment motion, the nonmoving party may not simply reiterate the allegations contained in the pleadings. "The object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, **497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990).**

A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, **477 U.S. at 247, 106 S.Ct. at 2510**, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, **477 U.S. at 252, 106 S.Ct. at 2512.**

Summary judgment is not barred by the mere existence of some factual dispute. *Anderson*, **477 U.S. at 248; see also,** *JPM Inc. v. John Deere Industrial Equipment Company*, **94 F.3d 270, 273 (7th Cir. 1996).** Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment. Disputes as to

irrelevant or unnecessary facts do not preclude summary judgment. *Clifton v. Schafer*, 969 F. 278, 281 (7th Cir. 1992).

## The Exhaustion Requirement

Defendants contend that plaintiff failed to exhaust his administrative remedies before filing suit on April 14, 2003.

Plaintiffs' claims are subject to the exhaustion requirement set forth in **42 U.S.C. § 1997e(a)** as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

***Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir.1999)** explained that exhaustion of administrative remedies pursuant to 42 U.S.C. § 1997e(a), while not jurisdictional *per se*, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. Exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case. **See 42 U.S.C. § 1997e(a); and *Perez*, 182 F.3d at 535-536.** The Supreme Court has held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." ***Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002)**.

The Seventh Circuit has recently reiterated that exhaustion must occur *before* suit is filed.

***Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).**  Exhaustion requires that a prisoner "properly take each step within the administrative process."  ***Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)**.

The IDOC grievance system is set forth in **20 Ill. Administrative Code §504.800 *et seq.***  In summary, these regulations provide that the inmate submits his grievance to a grievance officer, who is to make his report in writing to the Chief Administrative Office (*i.e.*, the warden).  The warden responds in writing of his decision.  If the warden denies the grievance, the inmate has 30 days in which to file an appeal to the Administrative Review Board (ARB).

Where, as in Illinois, the administrative system provides for an administrative appeal of the warden's decision, exhaustion requires that the prisoner file the appeal and give the appeal board an opportunity to decide the appeal.  ***Pozo,* 286 F.3d at 1024.**

## Analysis

In **Doc. 30**, defendants contend that plaintiff failed to exhaust as to Counts 1(a), 1(b), 1(c), 1(d), 1(e), 1(f), 1(g), 2(e), 2(f), 2(h), 2(m), 2(o), and 2(q).  In **Doc. 36**, defendant Moore contends that plaintiff failed to exhaust as to Count 1(b).  In **Doc. 118**, defendant Goerge contends that plaintiff failed to exhaust as to Count 1(e).

In support of the motions, defendants have filed the affidavits of Terri L. Anderson, Public Service Administrator (Administrative Review Board Chairperson), and of Michelle Baggott, Early Case Intervention Coordinator for the Illinois Department of Corrections at Tamms Correctional Center.  **See, Doc. 33 and exhibits attached to Docs. 37 and 119**.

Ms. Anderson's affidavit sets forth the grievance procedure available to plaintiff, and states that she has searched the records of the ARB regarding grievances filed by plaintiff.  She

states that the records reveal that plaintiff did not file grievances to the ARB on fourteen of his specified claims. Ms. Baggott's affidavit states that plaintiff's master file does not contain grievances or ARB responses for the same fourteen claims. The Court notes that some of the incidents referenced in the affidavits were already dismissed on preliminary review.

In response, plaintiff has filed copies of numerous grievances and responses thereto. **See, exhibits attached to Doc. 113.** Many of these grievances are irrelevant because they either concern events not in issue (e.g. exhibits B-7, B-8) or they were created after the date on which suit was filed (e.g., B22-B38, B41-B42.)

Much of plaintiff's exhibits consist of copies of grievances without any documentation showing that those grievances were exhausted by appealing to the ARB. **See, exhibits A1-A9, A11-A16, B1-B2, B4-5, B8-9, B11-B16, and B18-B21**. Exhibits A10 and B3 show that plaintiff exhausted two grievances, but they do not concern events alleged in this lawsuit.

The Court notes that plaintiff's exhibit B-7 demonstrates that he has exhausted as to defendant Osman on Count 2(u), but Osman is not moving for summary judgment as to that claim.

Recognizing that he cannot demonstrate that he has exhausted administrative remedies as to all of the claims in issue, plaintiff asserts that various prison employees have interfered with his use of the grievance procedures. He claims that he filed a grievance on June 14, 2002, which "covered most if not all" of the claims asserted in Count 1. **See, Doc. 113, p. 3**. According to plaintiff, this grievance was stolen and/or obstructed four times, which prevented him from exhausting it. This argument does not save plaintiff. His documents demonstrate that he knew as early as June 25, 2002, that the grievance had gone awry. **See, Exhibit B-2**. Instead of

simply rewriting the June 14, 2002, grievance, he began yet another round of grieving the loss of the original grievance.  In addition, the events alleged in the relevant subparts of Count 1 occurred from January to September, 2001.  Prior to September 1, 2001, an inmate had six months in which to file a grievance; the relevant sections of the Illinois Administrative Code were amended, effective September 1, 2001, to provide that a grievance must be filed within 60 days of the discovery of the event giving rise to the complaint.  **See, 20 Ill.Adm.Code § 504.810-850.**  Thus, a grievance filed on June 14, 2002, would not have been timely as to the events which he claims occurred from January to September, 2001.  Lastly, plaintiff has filed a copy of a grievance dated June 14, 2002, which is presumably the grievance in question.  **See, Exhibit B-21**.  The grievance states that it was accompanied by another 27 pages, but those additional pages are not part of the record.  It is evident from the face of the June 14, 2002, grievance that it concerned numerous events, including assaults by staff and other inmates, denial of medical treatment, and falsification of medical records.  There is no indication that this grievance actually concerned the events alleged in the relevant parts of Count 1.  Even plaintiff does not seem to be sure that it did, as he argues that the June 14, 2002, grievance "covered most if not all" of those events.

  In short, defendants' affidavits establish that plaintiff did not file or exhaust grievances as to the claims made in the relevant subparts of Count 1.  Plaintiff's evidence with regard to his June 14, 2002, grievance does not create a genuine issue of fact as to that issue.

  However, there is an issue of fact as to whether plaintiff's attempt to exhaust a grievance as to the claim set forth in Count 1(e) was thwarted.  He has produced a grievance dated August 31, 2001, which relates to Count 1(e), excessive force by Goerge and Null on August 24, 2001.

**See, exhibit attached to Docs. 116 and 126.** Plaintiff represents that, after the warden denied that the grievance qualified for processing as an emergency, he submitted it to the grievance officer, who never responded. **See, Doc. 116.** A failure to respond to an inmate's grievance means that the administrative remedy is not "available" and therefore failure to exhaust does not foreclose suit. *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)**.

Ms. Baggott's affidavit states that plaintiff's master file does not contain a grievance about an assault by Goerge and Null on August 24, 2001. However, the affidavit also states that the original grievance is placed in the master file after the grievance officer has processed it and sent it to the warden's office. **Baggott affidavit, ¶6**. This suggests that, if the grievance officer fails to process the grievance, the original grievance will not make it to the master file. If, as plaintiff alleges, the grievance officer failed to process his August 31, 2001, grievance as to Null and Goerge, the original of it would not be in his master file. Count 1(e) cannot be dismissed on this record.

With regard to Count 2, plaintiff has attached a grievance which relates to the claim set forth against defendant Osman in Count 2(e). The other defendants named in Count 2(e) are not named in the grievance.[1] **See, Exhibit B-4, attached to Doc. 113.** Contrary to defendants' argument, it appears that this grievance was exhausted. **See, Exhibit B-7**.

There is no evidence in plaintiff's submission that a grievance was exhausted as to any other claim made in Count 2. A grievance was filed as to Count 2(m), but it was not exhausted.

---

[1] **20 IL ADC 504.810** was amended effective May 1, 2003, to require that a grievance must include the names of persons involved in the complaint. Such requirements are valid. *Strong v. David*, **297 F.3d 646 (7th Cir. 2002).**

**See, Exhibit B-37.** Plaintiff attempted to file a grievance as to Count 2(h), but it was rejected as not containing enough information, and there is no indication that it was resubmitted. **See, Exhibit B-1**.

Plaintiff makes general arguments that various grievances and/or ARB responses were stolen. **See, Doc. 113, pp. 304.** This does not serve to create an issue of fact as to exhaustion. Defendants' affidavits establish that, if plaintiff did file and exhaust grievances, there would be copies in his master file and in the ARB files. The fact that documents were stolen from his cell, if that in fact happened, would not remove the copies from the files.

In sum, the record now before the Court establishes that plaintiff did not exhaust administrative remedies as to the claims stated in Counts 1(a), 1(b), 1(c), 1(d), 1(f), 1(g), 2(e), 2(f), 2(h), 2(m), 2(o), and 2(q). There is an issue of fact as to whether he exhausted as to 1(e), and the record reflects that he did exhaust as to the claim set forth in Count 2(e) as to Osman only.

## Recommendation

For the foregoing reasons, it is this Court's recommendation that the Motion for Summary Judgment filed by defendants Johnson, J Null, R Clover, C/O Cruise, C/O Gibson, B Goins, J Grubbs, Hilliard, Kizzer, M McGovern, C Nix, E Plott, C/O Serles, Shields, J Studder, J Walker, D Wallard, C Taylor, B Neighbors, D Folsom, C/O Dillingham, R Smith, Lois Prater, Toma Osman, C/O Ode, M Swetland, Lt Clark, George Welborn.**(Doc. 30) be GRANTED, except as to Count 1(e), and the claim set forth in Count 2(e) as to Osman only**.

The Motion for Summary Judgment filed by defendant J Moore **(Doc. 36) should be GRANTED**.

The Motion for Summary Judgment filed by defendant James Goerge **(Doc. 118)** should be **DENIED**.

If all of the above recommendations are accepted, Counts 1(a), 1(b), 1(c), 1(d), 1(f), 1(g), 2(e) as to all defendants except for Osman, 2(f), 2(h), 2(m), 2(o), and 2(q) should be dismissed. The dismissal must be without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

After those dismissals, the following Counts will remain pending:

Counts 1(e), 1(h), 2(d), 2(e) as to Osman only, 2(s), 2(u), and Count 4.

Objections to this Report and Recommendation must be filed on or before **February 28, 2006.**

**Submitted:  February 8, 2006.**

                                         s/ Clifford J. Proud
                                         **CLIFFORD J. PROUD**
                                         **UNITED STATES MAGISTRATE JUDGE**